# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-195V
Filed: February 2, 2023
PUBLISHED

|  |  |
|---|---|
| BRENDA ANDERSON,<br><br>　　　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　　　Respondent. | Special Master Horner<br><br>Shoulder Injury Related to<br>Vaccine Administration<br>("SIRVA"); Influenza ("flu")<br>vaccine; Dismissal; Injection<br>Site Location |

*David John Carney*, Green & Schafle, LLC, Philadelphia, PA, for petitioner.
*Sarah Black Rifkin*, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION[1]

On February 24, 2020, petitioner, Brenda Anderson, filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012)[2], alleging she suffered a shoulder injury related to vaccine administration ("SIRVA") following receipt of her October 11, 2018, influenza ("flu") vaccination at a Rite Aid Pharmacy. (ECF No. 1.) On November 10, 2022, a finding of fact issued concluding that there is preponderant evidence that the vaccine at issue was administered in the shoulder opposite from petitioner's injured shoulder. Thus, for the reasons discussed below, this case is now **DISMISSED**.

---

[1] Because this document contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

[2] Within this decision, all citations to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10-34.

1

I.   **Applicable Statutory Scheme**

Under the National Vaccine Injury Compensation Program, compensation awards are made to individuals who have suffered injuries after receiving vaccines. In general, to gain an award, a petitioner must make a number of factual demonstrations, including showing that an individual received a vaccination covered by the statute; received it in the United States; suffered a serious, long-standing injury; and has received no previous award or settlement on account of the injury. Finally – and the key question in most cases under the Program – the petitioner must also establish a causal link between the vaccination and the injury. In some cases, the petitioner may simply demonstrate the occurrence of what has been called a "Table Injury." That is, it may be shown that the vaccine recipient suffered an injury of the type enumerated in the "Vaccine Injury Table," corresponding to the vaccination in question, within an applicable time period following the vaccination also specified in the Table. If so, the Table Injury is presumed to have been caused by the vaccination, and the petitioner is automatically entitled to compensation, unless it is affirmatively shown that the injury was caused by some factor other than the vaccination. § 300aa-13(a)(1)(A); § 300 aa-11(c)(1)(C)(i); § 300aa-14(a); § 300aa-13(a)(1)(B).

As relevant here, the Vaccine Injury Table lists a Shoulder Injury Related to Vaccine Administration or "SIRVA" as a compensable injury if it occurs within 48 hours of administration of a vaccination. § 300aa-14(a) as amended by 42 CFR § 100.3. Table Injury cases are guided by "Qualifications and aids in interpretation" ("QAIs"), which provide more detailed explanation of what should be considered when determining whether a petitioner has actually suffered an injury listed on the Vaccine Injury Table. 42 CFR § 100.3(c). To be considered a "Table SIRVA," petitioner must show that her injury fits within the following definition:

> SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis . . . . A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

> (ii) Pain occurs within the specified time-frame;

> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 CFR §100.3(c)(10).

Alternatively, if no injury falling within the Table can be shown, the petitioner may still demonstrate entitlement to an award by showing that the vaccine recipient's injury or death was caused-in-fact by the vaccination in question. § 300aa-13(a)(1)(A); § 300aa-11(c)(1)(C)(ii). To so demonstrate, a petitioner must show that the vaccine was "not only [the] but-for cause of the injury but also a substantial factor in bringing about the injury." *Moberly ex rel. Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (quoting *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1352–53 (Fed. Cir. 1999)); *Pafford v. Sec'y of Health & Human Servs.*, 451 F.3d 1352, 1355 (Fed. Cir. 2006). In particular, a petitioner must show by preponderant evidence: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of proximate temporal relationship between vaccination and injury in order to prove causation-in-fact. *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005).

For both Table and Non–Table claims, Vaccine Program petitioners must establish their claim by a "preponderance of the evidence". § 300aa-13(a). That is, a petitioner must present evidence sufficient to show "that the existence of a fact is more probable than its nonexistence . . . ." *Moberly*, 592 F.3d at 1322 n.2. Proof of medical certainty is not required. *Bunting v. Sec'y of Health & Human Servs.*, 931 F.2d 867, 873 (Fed. Cir. 1991). However, a petitioner may not receive a Vaccine Program award based solely on her assertions; rather, the petition must be supported by either medical records or by the opinion of a competent physician. § 300aa-13(a)(1). Once a petitioner has established their *prima facie* case, the burden then shifts to respondent to prove, also by preponderant evidence, that the alleged injury was caused by a factor unrelated to vaccination. *Althen*, 418 F.3d at 1278; § 300aa-13(a)(1)(B).

## II.    Procedural History

Petitioner filed medical records and an affidavit marked as Exhibits P1-P5 and a Statement of Completion March 6, 2020. (ECF Nos. 6, 8.) She later filed further medical records marked as Exhibits P6-P10 between April and February of 2021. (ECF Nos. 12, 16, 20, 22.) Petitioner filed a second Statement of Completion on February 24, 2021. (ECF No. 23.)

Based on the allegations of the petition, the case was initially assigned to the Chief Special Master for potential informal resolution as part of the Special Processing Unit or "SPU". (ECF No. 10.) However, respondent advised as of April 30, 2021, that he would be contesting petitioner's claim and subsequently filed a Rule 4 Report recommending that compensation be denied. (ECF Nos. 25, 27.) Respondent raised a

number of issues, including that it is impossible to determine in which arm petitioner received her vaccination.  (ECF No. 27, pp. 7-8.)

After respondent filed his report, the Chief Special Master issued an Order to Show Cause on August 18, 2021.  (ECF No. 29.)  Based on his review of the record, the Chief Special Master concluded that petitioner "has failed to provide preponderant evidence that the allegedly causal vaccination was administered in her right, rather than left, arm."  (*Id*. at 1.)  He further indicated that petitioner "needs to further address the timing for onset of the right shoulder pain she attributes to her alleged SIRVA, the evidence that her symptoms were not limited to her right shoulder area, and the evidence that other conditions or abnormalities may explain her symptoms. If she cannot better substantiate these issues, her claim risks dismissal."  (*Id*.)  Petitioner was ordered to show cause why her Table SIRVA claim should not be dismissed.  (*Id*. at 4.)

In response to the Order to Show Cause, petitioner filed a supplemental affidavit (Ex. P11), four witness affidavits (Exs. P12-15), and additional medical records (Exs. P16-18).  Petitioner also filed a written brief.  (ECF No. 31.)  Respondent subsequently filed a responsive brief.  (ECF No. 32.)  Petitioner filed a reply and additional medical records (Ex. P19) in December of 2021.  (ECF Nos. 33-34.)  A follow up status conference was held on March 15, 2022.  (ECF No. 35.)  The Chief Special Master ordered petitioner to file additional evidence he identified based on review of the affidavits that had been filed.  (*Id*.)  Petitioner subsequently filed a supplemental affidavit accompanied by calendar entries as ordered by the Chief Special Master.  (ECF Nos. 36, 39; Exs. P20-22.)

Following further review, the Chief Special Master indicated that petitioner "has demonstrated that her claim cannot be appropriately dismissed at this time. Indeed, the factual issues in contention present difficult determinations that could go either way."  (ECF No. 40, p. 1.)  Accordingly, the Chief Special Master reassigned the case to the undersigned, indicating that "[f]urther proceedings shall be determined by the next special master assigned to the case."  (*Id*. at 2.)

On September 9, 2022, I issued a Scheduling Order.  (ECF No. 42.)  After reviewing the history of the case, I advised the parties that "[a]s currently postured, it appears that fact findings as to the injection site for the vaccination at issue as well as onset of the alleged vaccine-caused shoulder pain will be necessary."  (*Id*. at 2.)  I noted, however, that in response to the prior Order to Show Cause petitioner had taken issue with the Chief Special Master's preliminary inclination to place more weight on a handwritten notation on petitioner's vaccination consent form indicating a left shoulder administration than a computer-generated notation indicating a right shoulder administration.  (*Id*.)  Specifically, I quoted the following concern noted in petitioner's brief: "If the Court has evidence, representations from vaccine administrators or otherwise that details the process and procedures by which a vaccine administrator completes the handwritten and computer documentation of a vaccine administration, then such information should be disclosed immediately to Petitioner's counsel."  (*Id*. at 2 (quoting ECF No. 31, p. 12, n. 1).)

4

I instructed the parties to review prior decisions addressing fact findings as to injection site and specifically noted that these cases have involved discovery from the pharmacy at issue, including pharmacist testimony bearing on the issue of how administration records are generated.  (ECF No. 42, p. 2 (citing *Stoliker v. Sec'y of Health & Human Servs.*, No. 17-990V, 2018 WL 6718629 (Fed. Cl. Spec. Mstr. Nov. 9, 2018); *Mezzacapo v. Sec'y of Health & Human Servs.*, No. 18-1977V, 2021 WL 1940435 (Fed. Cl. Spec. Mstr. Apr. 19, 2021); *Hanna v. Sec'y of Health & Human Servs.*, No. 18-1455, 2021 WL 3486248 (Fed. Cl. Spec. Mstr. July 15, 2021).)  I allowed the parties 30 days to file status reports confirming whether they still believed the record is ripe for a fact finding as to injection site and onset after reviewing these cases.  (*Id*.)

On October 7, 2022, respondent filed a status report confirming that respondent believes the record to be ripe for the proposed fact findings.  (ECF No. 43.)  On October 11, 2022, petitioner filed a status report advising that "the record is ripe for a ruling as to onset and site of vaccination. Petitioner had briefed these issues in response to the Court's Show Cause Order and filed a Response on October 18, 2021 and a Reply on December 6, 2021."  (ECF No. 44.)

Accordingly, on October 12, 2022, I issued an Order (Non-PDF) advising that I intended to issue a fact finding as to date of onset of petitioner's alleged vaccine-caused shoulder pain as well as the injection site of the vaccination at issue based on the existing record.  Approximately one month later, I issued a finding of fact on November 10, 2022, finding that there is preponderant evidence that petitioner's October 11, 2018 flu vaccine was administered in her left shoulder, the shoulder opposite her alleged right shoulder injury.  (ECF No. 45.)  Because this finding was presumptively dispositive, I did not reach the further question of onset.  (*Id*.)

On the same date the finding of fact was issued, a Scheduling Order was also issued explaining that the finding of fact is "incompatible with petitioner's claim as pleaded."  (ECF No. 46.)  Petitioner was provided 30 days to file "either an amended petition alleging an injury caused by a vaccine administered in her left shoulder or a written brief pursuant to Vaccine Rule 8(d) explaining why this finding of fact is not fatal to petitioner's claim based on her existing petition.  I will determine whether this case will be dismissed based on that filing." (*Id*.)

On December 12, 2012, petitioner filed a response to the November 10, 2022 Scheduling Order styled as a "Motion for a Ruling on the Record." (ECF No. 48.)  I directed respondent to file a response and that response was filed on January 11, 2023.  (ECF No. 49.)  Petitioner filed a reply on January 25, 2023.  (ECF No. 50.)

Accordingly, this case is now ripe for resolution.

### III.     Factual History and Finding of Fact

The factual history underlying the fact finding as to injection site is explained in much greater detail in the finding of fact. (*See* ECF No. 45; *see also Anderson v. Sec'y of Health & Human Servs.,* No. 20-195V, 2022 WL 17484532 (Fed. Cl. Spec. Mstr. Nov. 10, 2022).) This history, and the accompanying analysis resolving the factual question of the vaccine injection site, is incorporated by referenced and will not be repeated in full. However, briefly and for the benefit of the reader, the history can be summarized as follows.

Petitioner was vaccinated at Rite Aid Pharmacy on October 11, 2018. (ECF No. 45, p. 4 (discussing Ex. P1).) Records produced by the pharmacy include computer-generated "service details" that indicate a right shoulder administration, but also a signed and dated clinic questionnaire and consent form, completed in part by both the petitioner and vaccine administrator, indicating a left shoulder administration. (*Id*.) Petitioner avers in affidavit testimony that she was vaccinated in her right shoulder but did not provide any specific narrative description of her vaccination encounter. (*Id.* at 6 (discussing Ex. P2).)

Petitioner argued that it is not possible to weigh the "service details" and consent form differently. In effect, petitioner argued that based on this overall record the two notations must be treated as being in equipoise. (ECF No. 45, p. 8.) However, the finding of fact placed greater weight on the signed consent form because it had indicia of being a contemporaneous encounter record while there is no evidence of record to indicate the timing or purpose of the computer-generated "service details." (*Id.* at 10-12.)

Petitioner acknowledges in her affidavit that she did not initially understand her alleged condition to be related to her vaccination. (ECF No. 45, p. 6 (discussing Ex. P2), *id.* at 13.) Initially she thought she was experiencing a cardiac problem, and then later believed her flu vaccine had caused an allergic reaction. (*Id*.) In the month following her vaccination, petitioner sought treatment for shoulder and neck pain twice without mentioning her vaccination as a relevant aspect of her history. (ECF No. 45, pp. 4-5 (discussing Ex. P3, pp. 6, 12, 35, 40-41).)

The third time she sought treatment on November 2, 2018, petitioner raised the fact of her prior vaccination, but the record specifies a left shoulder administration despite her presenting for a right shoulder injury. (ECF No. 45, p. 5 (discussing Ex. P3, p. 69, 71).) Petitioner reported her belief that her injury was related to an allergic reaction. (*Id*.) The medical provider recorded the history of vaccination, but did not attribute the shoulder injury to the vaccination when assessing a musculoskeletal shoulder injury. (*Id*.)

Petitioner argued the left shoulder notation within the November 2 record must be understood as a typographic error; however, the finding of fact cited factors that suggest the record should be accepted at face value, including the lack of evidence

calling the provider's recordkeeping practices into question, the specific phrasing of the notation, and the fact that the notation is consistent with the signed consent form for vaccination. (ECF No. 45, pp. 8, 12 (discussing ECF No. 31, p. 16).) Nonetheless, petitioner also argued the left shoulder notation would be "illogical." However, the finding of fact explained that petitioner herself averred that she did not initially understand her condition to be related to her vaccination, she reported a possible allergic reaction to her vaccine rather than any concern of a direct musculoskeletal injury, and the provider did not ultimately attribute the diagnosed musculoskeletal injury to petitioner's vaccination. (ECF No. 45, p. 13.) Therefore, it was not "illogical" to accept the medical record as written. "Nor, given petitioner's own uncertainty regarding the relationship between her vaccination and her pain, does it provide strong evidence that the pain must necessarily correlate to the injection site." (*Id.*)

Petitioner then pursued physical therapy without discussing the cause of her injury. (ECF No. 45, p. 5 (discussing Ex. P4, p. 115).) Eventually, petitioner later sought treatment from an orthopedist on April 2, 2019, approximately six months post-vaccination. That orthopedist concluded petitioner's history as reported was consistent with SIRVA. (ECF No. 45, p. 5 (discussing Ex. P5, p. 17).) However, the finding of fact concluded that "[g]iven petitioner's earlier vaccination and treatment records, the more remote history she provided the orthopedist is entitled to less weight." (ECF No. 45, p. 13.)

Petitioner also filed witness statements from several individuals. (ECF No. 45, pp. 6-8 (discussing Exs. P12-15).) However, the finding of fact concluded that these statements were either too vague to help resolve the injection site question or described interactions incompatible with petitioner's own averment that she did not initially attribute her shoulder injury to her vaccination. (ECF No. 45, p. 13-14.) Specifically, two of petitioner's witnesses, Ms. Johnson and Mr. McMath, described interactions with petitioner that spoke to the fact of petitioner suffering a right shoulder condition, but professed no basis for knowing about the injection site for petitioner's vaccination. (ECF No. 45, p. 14.) Additionally, two other witnesses, Mr. Williams and Dr. Jackson, stated that they recalled having conversations with petitioner that attributed her shoulder pain to her vaccination. However, these conversations reportedly took place during the period petitioner averred that she did not herself associate her condition to her vaccination. (*Id.*) Given this conflict, the finding of fact concluded that "it is far less likely that these specific conversations occurred as relayed, or, if they did, that they occurred on the date specified." (*Id.*) One of these witnesses, Mr. Williams, provided records to support his recollection of a specific meeting having been cut short due to petitioner's condition. (ECF No. 45, pp. 6-7 (discussing Exs. P12, P20).) However, closer inspection indicated the calendar entries that supported his recollection were not actually contemporaneous records and the records that did appear to be contemporaneous did not corroborate that the meeting at issue had been cut short. (ECF No. 45, p. 14.)

Upon detailed review of the record as a whole, including the Rite Aid pharmacy records, the subsequent treatment records, and all of the witness statements, the finding of fact concluded:

> Based on all of the above, when considering the record as a whole, there is not preponderant evidence that petitioner's vaccination was administered in her right arm. Two significant contemporaneous medical records confirm petitioner's vaccination was administered in her left arm – the vaccine consent form itself and the first treatment record in which petitioner reported the fact of her prior vaccination. Petitioner is unpersuasive in suggesting that these records should be given reduced weight and/or that they are outweighed by the other evidence of record. In fact, petitioner's view of the evidence relies on the presence of an extraordinary coincidence that two key individuals – the vaccine administrator and petitioner's primary care provider – would make the exact same recordkeeping mistake at different facilities nearly a month apart and with no readily available explanation for either error. It is all the more difficult to accept this coincidence when petitioner acknowledges that she did not herself initially perceive her shoulder pain as being related to her vaccination.

(ECF No. 45, pp. 14-15.) The finding of fact concluded that the evidence of record preponderates in favor of a left arm administration of the subject vaccination. (*Id*. at 1, 15.)

### IV.     Party Contentions

Petitioner styles her brief pursuant to Vaccine Rule 8(d) as a "Motion for Ruling on the Record." (ECF No. 48.) However, she also requests that it be deemed as a motion for reconsideration pursuant to Vaccine Rule 10(e). (*Id*. at 12.) Further to this, petitioner requests that a hearing be held. In sum, petitioner states:

> Petitioner has not only shown cause as to why this claim must not be dismissed, but also why Petitioner has carried her burden of proving that her vaccination was in her right shoulder. In addition, Petitioner would request that either the Court should consider this Response as a simultaneous Motion for a Ruling on the Record and enter judgment in favor of Petitioner. In the alternative, Petitioner would request that the Court vacate its Findings of Fact and Conclusions of Law and hold a hearing on the issue of situs and onset so that this case can be afforded the full and fair consideration by the Court given the evidence in the record.

(ECF No. 48, pp. 28-29.)

In response, respondent stresses both that the undersigned's finding of fact was correct and that petitioner had "ample opportunity" to present her claim in advance of the fact finding. (ECF No. 49, p. 2-3.) Accordingly, respondent contends that petitioner

is entitled to neither reconsideration nor a fact hearing. (*Id.* at 2.) Citing to my Scheduling Order of November 10, 2022, respondent further notes that petitioner has neither amended her petition to include allegations of any injury related to a left-arm vaccine administration nor provided any explanation in her motion explaining why the finding of fact is not fatal to petitioner's claim of a right shoulder injury. (*Id*. at 1-2.) Accordingly, respondent argues that petitioner has not shown how her injury could have been caused by a vaccination in the opposite arm. (*Id*. at 6.) Additionally, respondent argues there are reasons beyond the prior finding of fact for concluding that petitioner has not met her burden of proof with respect to a Table SIRVA claim. Specifically, he contends there is not preponderant evidence of onset occurring within 48 hours of vaccination and that there is evidence to indicate the condition was not confined to petitioner's shoulder. (*Id*. at 6-8.) Respondent urges that the case be dismissed. (*Id*. at 8.)

In reply, petitioner amplifies the points she raised in her initial motion with respect to the injection site of the subject vaccine. (ECF No. 50.) Additionally, petitioner adds a request for an opportunity to depose the medical providers who generated her November 2, 2018 medical record, continuing to argue that the notation that indicates a left shoulder vaccine administration can only be understood as a typographical error. (*Id*. at 4.) She also responds to respondent's contention that, even setting the injection site aside, she has not otherwise proven that she suffered a Table Injury of a right-shoulder SIRVA. (*Id*. at 5-12.)

V.  **Discussion**

   a. **Petitioner has Presented No Basis for Reconsideration of the Prior Finding of Fact**

Vaccine Rule 10(e), which governs motions for reconsideration, provides, "[e]ither party may file a motion for reconsideration of the special master's decision within 21 days after the issuance of the decision . . . ." Vaccine Rule 10(e)(1). Generally "[a] court may grant such a motion when the movant shows '(1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice.'" *System Fuels, Inc. v. United States*, 79 Fed. Cl. 182, 184 (2007) (quoting *Amber Resources Co. v. United States*, 78 Fed. Cl. 508, 514 (2007)). Granting such relief requires "a showing of extraordinary circumstances." *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 826, 126 S.Ct. 366, 163 L.Ed.2d 72 (2005). Special masters have the discretion to grant a motion for reconsideration if to do so would be in the "interest of justice." Vaccine Rule 10(e)(3). It has previously been noted, however, that there is little guidance interpreting Vaccine Rule 10(e)(3) beyond the conclusion that it is within the special master's discretion to decide what constitutes the "interest of justice" in a given case. *See Krakow v. Sec'y of Health & Human Servs.*, No 03-632V, 2010 WL 5572074, at *3 (Fed. Cl. Spec. Mstr. Jan. 10, 2011) (granting reconsideration of motion to dismiss case for failure to prosecute).

Petitioner's motion is entirely silent as to any explanation of why reconsideration is in the interest of justice under the specific procedural posture of this case. Moreover, as respondent stresses in his response, prior to issuance of the finding of fact, petitioner was specifically prompted to examine whether the record of this case was complete given prior cases that took discovery from pharmacies regarding the same question that was at issue in this case. (ECF No. 49, p. 4 (citing ECF No. 45, pp. 11-12; *see also* ECF No. 42).) Just prior to that prompting, the Chief Special Master had indicated upon reassignment that further proceedings were necessary because the factual question at issue "could go either way." (ECF No. 40, p. 1.) Nonetheless, petitioner's response was unambiguous in stating that petitioner believed the issue to be ripe for resolution. (ECF No. 44.) As the Court of Federal Claims indicated in *Sword v. United States*: "What trial attorney worth his or her salt would not try a case a bit differently once counsel knew what the fact-finder found important within the body of evidence? But fairness does not require that we accede to this all-to-human desire."[3] 44 Fed. Cl. 183, 191 (1999). (As discussed below, petitioner's requests for a fact hearing and/or to depose her primary care provider fail in part for similar reasons.)

Furthermore, petitioner's substantive disagreements with the finding of fact are unpersuasive as arguments favoring reconsideration. Petitioner argues that the finding of fact "provides no credible rationale" for the conclusion that the handwritten consent form should be given greater weight than the computer-generated portion of the pharmacy records. (ECF No 48, p. 15.) However, the finding of fact clearly states that the rationale for weighing the handwritten notation more heavily is that

> By inclusion of both a patient questionnaire and pharmacy use portion with prompts for administration site, the consent form confirms on its face that it is intended for use during the encounter for vaccination. Further to this, the consent form is signed by both petitioner and the vaccine administrator and is further dated by the vaccine administrator. This evidences that the consent form was completed in petitioner's presence and at the time of vaccination. Moreover, the consent form appears to have been completed as it should have been in the regular course and is therefore facially trustworthy. In contrast, while the "service details" separately contained in the Rite Aid records contain some of the same information, neither the specific purpose of that separate computer record nor the timing of its creation is evidenced based on the record that has been developed in this case.

(ECF No. 45, p. 11 (internal citations omitted).)

Initially, petitioner offered no attempt to explain why this rationale is not credible as claimed nor cited any authority to suggest these types of distinctions are not part and

---

[3] I have also had prior occasion to caution this very counsel that "[m]otions for reconsideration are not intended to be used as a mere mulligan." *Jafary v. Sec'y of Health & Human Servs.*, No. 20-991V, 2022 WL 4457904, at *6 (Fed. Cl. Spec. Mstr. Aug. 31, 2022).

parcel of the special master's duty to weigh the evidence. (ECF No. 48.) In her reply, petitioner cites a special master's decision in *Sprinkle v. Secretary of Health and Human Services* for the proposition that a handwritten vaccine record cannot be "presumed" to be more authentic than a computer-generated vaccine administration record. (ECF No. 50, p. 4 (citing 2022 U.S. Claims LEXIS 2710, *7 (Jan. 18, 2023).) However, *Sprinkle* merely acknowledges that handwritten notations can sometimes be incorrect. As explained in the above quoted language, the finding of fact does not merely presume the consent form to be more reliable simply because it is handwritten. The finding of fact explains that the form on its face confirms that it is intended for use during the encounter for vaccination and the date and signatures confirm that is how it was used. The "service details" petitioner urges be given equal weight have none of these characteristics and petitioner opted not to develop the record with respect to Rite Aid's recordkeeping practices.[4]

      Petitioner's reply also raises the Federal Circuit precedents in *Kirby v. Secretary of Health & Human Services* and *James-Cornelius v. Secretary of Health & Human Services* for the respective propositions that medical records cannot be presumed to be accurate and that sworn testimony by an individual with personal knowledge is important to the analysis.[5] (ECF No. 50, p. 2.) Thus, petitioner argues that her

---

[4] In seeking reconsideration, petitioner stresses that "[t]here is no evidence from the custodian of records or the pharmacy that details how records are prepared, completed, and maintained for Special Master Horner to make this conclusion." (ECF No. 48, p. 15.) In her reply, petitioner goes further, explicitly arguing that the Rite Aid records cannot be distinguished from one another "without testimony from Rite Aid that handwritten forms are more reliable." (ECF No. 50, p. 5.) But, given the procedural history of this case, the lack of discovery from Rite Aid on this issue is a circumstance of petitioner's own choosing. For petitioner to argue that the lack of custodial information should prevent any distinguishing of the signed consent form from among the Rite Aid documents despite what is evident on the face of the document, while simultaneously and willfully blinding herself to any of the relevant custodial details, is equivalent to requesting that the special master apply a *presumption against* the consent form based on no evidence whatsoever. Indeed, petitioner's briefing includes requests to reopen the record for purposes of a fact hearing and to depose petitioner's primary care provider, but conspicuously does not request any opportunity to seek discovery regarding the pharmacy's recordkeeping practices despite repeatedly raising this very issue in her briefs.

[5] In *Kirby*, the special master concluded that there was preponderant evidence based on the record as a whole that a vaccine injury had persisted for more than six months in satisfaction of the Vaccine Act's severity requirement despite an intervening record that had stated petitioner was "feeling fine" and with "no complaints." 997 F.3d 1378, 1383 (Fed. Cir. 2021). However, the Court of Federal claims had reversed, citing prior cases that indicated that medical records are presumed to be accurate and complete. The Federal Circuit rejected the notion that such a presumption exists. *Id*. at 1382-83. The Federal Circuit explained that "[t]hose statements are general in nature and do not necessarily mean she was in perfect health. Indeed, Ms. Kirby also reported joint pain, depression, anxiety, and other ailments during those visits. Thus, the special master's determination that there is no conflict between Ms. Kirby's testimony and her reports of 'feeling fine' was not arbitrary and capricious." *Id*. at 1383-84. In *James-Cornelius*, the special master had declined to consider a petitioner's affidavit in the context of attorneys' fees and costs as part of an inquiry of the "objective evidence" supporting a reasonable basis for the filing of the petition. The Federal Circuit held in relevant part that "[w]hile lay opinions as to causation or medical diagnosis may be properly categorized as 'subjective belief' when the witness is not competent to testify on those subjects, the same is not true for sworn testimony as to facts within the witnesses' personal knowledge, such as the receipt of a vaccine and the timing and severity of symptoms." 984 F.3d 1374, 1380 (Fed. Cir. 2021).

personal knowledge regarding the receipt of her vaccination is objective evidence supporting her claim.  (*Id.* at 2-3.)  In contrast, petitioner contends that reliance on the "LA" notation circled on petitioner's vaccine consent form constitutes mere "assumption" that is "not rooted in evidence."  (*Id*. at 2.)  However, this argument is not persuasive.

      First, petitioner's affidavit was weighed within the analysis.  Nothing in the Federal Circuit's *James-Cornelius* holding suggests that testimony will always be persuasive simply because it is within the witness's competency to provide it.  In fact, the Circuit stressed that "medical records may indeed serve as important corroborating evidence for evaluating testimony's credibility."  984 F.3d at 1380.  But in this case, the contemporaneous medical records do not provide corroboration of a right arm administration.  Petitioner's first treatment records do not attribute her injury to her vaccination or reference the vaccination at all and two key records – the vaccine consent form and the first treatment record to mention her vaccination – indicate the opposite arm.  Nor does petitioner's affidavit provide any specific recollections regarding her encounter for vaccination that would support her stated recollection of a right arm administration.  Second, as quoted above, the finding of fact concluded that on this record the signed consent form on its face had more indicia of being contemporaneous to the vaccination encounter than did the computer generated "service details." This is not mere "assumption."  It is a plain reading of the document.  Moreover, unlike the medical record at issue in *Kirby* that involved general statements, the factual question here represents a discrete point for which the record at issue has a specific prompt and the resulting "LA" notation petitioner disputes is unambiguously a notation that the vaccine was administered in petitioner's left arm.

      Petitioner also cites five other adjudications of injection situs by different special masters.  Petitioner asserts that these other adjudications appropriately considered the totality of the record whereas the fact finding in this case did not.  (ECF No. 48, pp. 17-19 (citing *Christensen v. Sec'y of Health & Human Servs*., No. 19-7V, 2022 WL 1020386 (Fed. Cl. Spec. Mstr. Feb. 28, 2022); *Syed v. Sec'y of Health & Human Servs*., No. 19-1364V, 2021 WL 2229829 (Fed. Cl. Spec. Mstr. Apr. 28, 2021); *Irwin v. Sec'y of Health & Human Servs.*, No. 19-956V, 2021 WL 5504701 (Fed. Cl. Spec. Mstr. Oct. 18, 2021); *Baker v. Sec'y of Health & Human Servs*., No. 19-1771V, 2020 WL 6580192 (Fed. Cl. Spec. Mstr. Oct. 9, 2020); *Boyd v. Sec'y of Health & Human Servs.*, No. 19-1107V, 2021 WL 4165160 (Fed. Cl. Spec. Mstr. Aug. 12, 2021).  Petitioner further stresses that vaccine administration records are not "per se reliable simply because they come first."  (*Id*. at 16-17.)

      I have previously observed in my own prior decisions that the question of injection site "is an issue that arises repeatedly in the specific context of SIRVA, both because SIRVA is a localized injury occurring near the site of injection and because experience litigating SIRVA claims has shown that pharmacy vaccine administration records are not *necessarily* reliable in documenting injection site." *Mezzacapo,* 2021 WL 1940435 at *6 (emphasis added).  Thus, the finding of fact in this case explains that while medical records are often afforded substantial weight, "this rule is not absolute" and that medical records "are only as accurate as the person providing the information."

(ECF No. 45, pp. 9-10) (quoting *Parcells v. Sec'y of Health & Human Servs.*, No. 03-1192V, 2006 WL 2252749, at *2 (Fed. Cl. Spec. Mstr. July 18, 2006).)  I agree with the above-referenced adjudications stressed by petitioner in that it is important that special masters recognize that vaccine administration records can sometimes be incorrect and that they should not be accepted reflexively.  However, that is a far cry from presuming they are to be distrusted generally or without good reason.  Vaccine administration records are still, after all, contemporaneous medical records.[6]  In this case, the finding of fact addresses the entire record, including the pharmacy records, the subsequent treatment records, and the witness statements, to conclude that the signed consent form is entitled to significant weight as a contemporaneous record and that the evidence as a whole preponderates in favor of a left shoulder administration.

Given the fact intensive nature of this determination, the fact that petitioner has located a select number of other adjudications reaching a different result on different overall records is not illuminating.   Indeed, the five prior cases cited by petitioner are clearly distinguishable even by petitioner's own description.[7]  Petitioner explains that the *Christiansen* petitioner knew he did not receive his vaccination in his left shoulder due to a prior shoulder surgery and that "all of the other records" documented a right shoulder administration.  (ECF No. 48, p. 17.)  Petitioner likewise explains that the *Syed* and *Boyd* petitioners "consistently" reported a right arm administration to their treating physicians.  (*Id*. at 18-19.)  Here, however, the finding of fact explains that petitioner did not explain the basis for her recollection of a right arm administration, instead averred that she herself did not initially associate condition to her vaccination, and her subsequent medical records were *not* consistent in identifying a right shoulder vaccine administration – the first two treatment records included no vaccine attribution, the third specified a left shoulder administration, and it was only months after vaccination that petitioner's orthopedist eventually recorded a right arm SIRVA based on a more remote history.  In *Irwin* and *Baker*, petitioner explains, the vaccine administration record was silent as to injection site rather than being contradictory to petitioner's claim as in this case.  (*Id*. at 18.)

Finally, petitioner's briefs reiterate at length her view of the record evidence.  However, the implicit argument that this recitation reveals the finding of fact to be

---

[6] It is also worth stressing here that the vast majority of SIRVA claims, which themselves now constitute the most commonly filed type of case in the program, are resolved in reliance on contemporaneous vaccine administration records, including very often signed consent forms, which are routinely accepted by all involved as facially valid.  That is, signed vaccine consent forms are in the main relied upon as trustworthy contemporaneous medical records without debate.

[7] In any event, even if these cases had been similar, prior decisions do not control the outcome of this case.  *Boatmon v. Sec'y of Health & Human Servs.,* 941 F.3d 1351, 1358-59 (Fed. Cir. 2019); *Hanlon v. Sec'y of Health & Human Servs.,* 40 Fed. Cl. 625, 630 (1998).  Federal Circuit holdings regarding legal issues are binding on special masters.  *Guillory v. Sec'y of Health & Human Servs.,* 59 Fed. Cl. 121, 124 (2003), *aff'd* 104 F. App'x. 712 (Fed. Cir. 2004); *see also Spooner v. Sec'y of Health & Human Servs.,* No. 13-159V, 2014 WL 504728, at *7 n.12 (Fed. Cl. Spec. Mstr. Jan. 16, 2014).  However, decisions by other special masters or by the Court of Federal Claims are not binding.  *Hanlon*, 40. Fed. Cl. at 630.  Nor, for that matter, are special masters obligated to distinguish decisions reaching a different result.  *Boatmon,* 941 F.3d at 1358.

erroneous is not persuasive for all the reasons discussed within the finding of fact itself. On the whole, petitioner's briefs focus on repeating the same assessment of the record evidence that was rejected by the prior fact finding and largely fail to grapple directly with the reasoning contained within the finding of fact.

### b. It is Appropriate to Resolve This Case Without a Fact Hearing or Additional Discovery

As explained by the Vaccine Rules, special masters are charged with adjudicating cases in this program while "endeavoring to make the proceedings expeditious, flexible, and less adversarial, while at the same time affording each party a full and fair opportunity to present its case and creating a record sufficient to allow review of the special master's decision." Vaccine Rule 3(b)(2). Further, "[t]he special master will determine the format for taking evidence and hearing argument based on the specific circumstances of each case and after consultation with the parties." Vaccine Rule 8(a). A special master must receive evidence "governed by fundamental fairness to both parties." Vaccine Rule 8(b)(1). However, it is within the special master's discretion to resolve a case based on written submissions without conducting an evidentiary hearing. Vaccine Rule 8(d).

The decision to rule on the record in lieu of hearing has been affirmed on appeal. *Kreizenbeck v. Sec'y of Health & Human Servs.*, 945 F.3d 1362, 1366 (Fed. Cir. 2020); *see also Hooker v. Sec'y of Health & Human Servs.*, No. 02-472V, 2016 WL 3456435, at *21 n.19 (Fed. Cl. Spec. Mstr. May 19, 2016) (citing numerous cases where special masters decided case on the papers in lieu of hearing and that decision was upheld). Special masters simply are not required to hold a hearing in every matter, no matter the preferences of the parties. *Hovey v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 397, 402–03 (1997) (determining that special master acted within his discretion in denying evidentiary hearing); *Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993); *Murphy v. Sec'y of Health & Human Servs.*, No. 90-882V, 1991 WL 71500, at *2 (Fed. Cl. Spec. Mstr. Apr. 19, 1991). Nonetheless, the principle of fundamental fairness that governs the admission of evidence in this program (*see* Vaccine Rule 8(b)(1)) requires a special master to carefully consider whether additional evidence should be admitted, even after the evidentiary record has closed. *Horner v. Sec'y of Health & Human Servs.*, 35 Fed. Cl. 23, 27 (1996) (explaining that "[i]n light of the critical importance of the record and the possibility of authentication, the Court finds that fundamental fairness requires that the special master determine whether the document is genuine and admit the document if he confirms its authenticity . . . Although consideration of the vaccine record at this point is inconvenient, it is not fundamentally unfair to the respondent.")[8]

---

[8] The Court of Federal Claims has recognized four factors that should be considered when determining whether it is appropriate to reopen the record on entitlement to consider subsequently filed evidence. *Vant Erve v. Sec'y of Health & Human Servs.*, 39 Fed. Cl. 607 (1997), *aff'd*, 232 F.3d 914 (Fed. Cir. 2000). Those four factors are: (1) the nature of the proffered new evidence; (2) the prejudice to the parties; (3) the length of the delay; and (4) the reason for the delay. *Id*. at 612. Importantly, however, the factors do not warrant equal weight, with the nature of the proffered evidence being the "paramount test." *Id*. The first prong examining the nature of the evidence looks to "the extent to which the new evidence is

In this case, the parties were given clear notice of the ultimately dispositive factual issue in this case as well as a full and fair opportunity to develop the record on that point. Before this case was reassigned to my docket, the Chief Special Master raised the issue of injection situs to the parties in his order to show cause, which prompted petitioner to file additional evidence. Thereafter, the case was reassigned and I further prompted the parties to confirm that the record was ripe for a finding of fact as to the injection site of petitioner's vaccination and, after they so confirmed, I further advised of my intention to rule based on the existing record. No objections were raised prior to issuance of the finding of fact and no requests for a hearing or any additional discovery were made. Accordingly, I conclude that the parties have had a full and fair opportunity to develop the record and that it is appropriate to resolve this case without any hearing or any opportunity to depose witnesses. I am not persuaded by petitioner's belated requests to seek additional evidence.

Petitioner now argues that to dismiss this case without a fact hearing is arbitrary and an abuse of discretion. (ECF No. 48, p. 28.) However, it is difficult to separate this argument from petitioner's mistaken assertion that the finding of fact simply ignored rather than weighed the record evidence. In her motion, petitioner discusses why she believes her affidavit and witness statements support her claim, but she offers no discussion of the factors that militated against giving those statements greater weight and contributed to the overall outcome of the finding of fact. Contrary to petitioner's suggestion that the record evidence has been ignored, the finding of fact discusses each witness statement and explains why they were weighed as they were, noting in particular that they are in tension with petitioner's own affidavits, which were in fact credited regarding key details. Indeed, aspects of petitioner's own affidavits were credited in evaluating the record of her November 2 medical encounter. (ECF No. 45, p. 13.) Nor does petitioner articulate how, if the witnesses testify in a manner consistent with their conflicting affidavits, a fact hearing would be reasonably likely to materially change either the analysis of the fact finding or the ultimate outcome of the case. In any event, petitioner does not even explain more generally why a fact hearing should be viewed as an appropriate use of judicial resources. Indeed, petitioner herself quotes prior cases explaining that the Vaccine Act and Rules "not only contemplate, but encourage" special masters to rule based on the written record. (ECF No. 48, p. 13 (quoting *Al-Uffi v. Sec'y of Health & Human Servs.*, No. 13-956V, 2017 WL 1713113, *27 n. 26 (Fed Cl. Spec. Mstr. Feb. 22, 2017).)

Petitioner also requests an opportunity to challenge the accuracy of her November 2, 2018 medical record by deposing her care provider. (ECF No. 50, p. 4.) However, this request has little basis, is speculative with regard to the evidence it will produce, and is unlikely to be outcome determinative. Petitioner contends that the

---

both relevant and affective of outcome." *Id*. The second prong examining prejudice to the parties should focus on "evaluating the practical consequences of reopening on the nonmoving party's ability to re-establish its case." *Id*. at 614. The third and fourth prongs, the length and reason for delay, are of lesser importance, but should be considered in connection with the other factors by examining "whether the delay has prejudiced the nonmoving party and the identity of the party that caused the delay." *Id*.

deposition is necessary so that the record can be authenticated. (*Id*. at n. 1.) However, the November 2, 2018 medical record is already in evidence and has been duly considered without the authenticity of the record having been raised as an issue by either party. Petitioner's urging that the record is best interpreted as including a contemporaneously recorded error does not render the document inauthentic. Rather, petitioner's request is based solely on her own interpretation of the record as illogical. However, the finding of fact already explained why it is *not* illogical to accept the record as written and at face value. Additionally, petitioner has provided no basis for her apparent speculation that the provider, if called upon to testify, would have an independent recollection of an encounter that occurred more than four years ago and/or be likely to contradict his own contemporaneous record of the encounter. In any event, even if petitioner did find success in challenging the accuracy of the left arm notation within the November 2, 2018 record, this would still leave unaddressed the fact that petitioner's contemporaneous vaccine consent form still records a left arm administration. Further to that, petitioner's affidavit would still indicate she initially did not associate her condition to her vaccination and her two intervening medical treatment records would still be silent as to any connection between her vaccination and injury. Thus, considered as a whole, the medical records still would not offer a consistent picture of a SIRVA. Indeed, the potential discovery most directly probative of the injection site at issue is the discovery petitioner has not requested. (*See* n. 4, *supra*.)

Furthermore, there must also be some onus on petitioner to explain why she should not be held to the consequences of her earlier choice to proceed on the existing record and why her belated requests would not prejudice respondent. Here it must be stressed that petitioner is not asserting that she has any newly available or newly discovered evidence. Moreover, the specific considerations she urges – that the November 2 record contains an error and that the witness statements should carry significant weight – were already placed at issue prior to my reaching the finding of fact. The only factor that has since changed is that I have now completed my weighing of the evidence. Thus, allowing petitioner to pursue new evidence at this juncture would risk creating a "heads I win, tails you lose" situation wherein petitioner's feint allows her to pick and choose whether she will accept the result of a duly rendered fact finding despite having failed to come forward with any basis for reconsideration. That would be irregular in itself, but also carries a risk of prejudice to respondent who also agreed to proceed to a fact finding based on the status quo as both parties understood it at the time. Implicit to that agreement was a decision by respondent to likewise forgo discovery for the sake of settling the factual question expeditiously and to accept the result. As noted above, special masters must receive evidence "governed by fundamental fairness to *both* parties." Vaccine Rule 8(b)(1) (emphasis added).

### c. Petitioner is Not Entitled to Compensation

Petitioner was prompted to provide a brief pursuant to Vaccine Rule 8(d) explaining how the finding of fact of a *left* shoulder administration of petitioner's October 11, 2018 flu vaccine could be compatible with any vaccine caused injury she pleaded. Petitioner provided no argument in support of such an assertion. Instead, she argued

that the finding of fact should be reversed and/or that she should be permitted to seek further evidence in support of her allegation of a right shoulder administration. Finding her arguments unpersuasive, she has not demonstrated that she suffered any injury compatible with a *left* shoulder administration of the subject vaccine.

In order to demonstrate a Table Injury of SIRVA, petitioner must demonstrate, *inter alia*, that she suffered pain and reduced range of motion "limited to the shoulder *in which the intramuscular vaccine was administered*." 42 CFR §100.3(c)(10) (emphasis added). Because there is preponderant evidence that petitioner suffered a right shoulder injury and also preponderant evidence that petitioner's October 11, 2018 flu vaccine was administered in her left shoulder, petitioner cannot preponderantly prove that she suffered a SIRVA resulting from the flu vaccine at issue in the petition.

A petitioner can, alternatively, demonstrate the existence of a shoulder injury caused-in-fact by a vaccination. Such a claim may be based on medical records or medical opinion. In that regard, petitioner's treating orthopedist (Dr. Lazor) did opine that her history is consistent with a SIRVA. (Ex. P5, p. 17.) However, that conclusion was necessarily based on a reported history that is not ultimately supported by preponderant evidence. To be clear, petitioner argues that the orthopedist's diagnosis provides evidence supporting her allegation of a right arm administration. (ECF No. 48, pp. 25-26; ECF No. 50, pp. 7-8.) Inherent to that argument is acknowledgement that the opinion is premised on a right arm administration. Petitioner offers no argument that Dr. Lazor's orthopedic opinion can stand in the face of preponderant evidence of a left shoulder administration. *See, e.g. Hodge v. Sec'y of Health & Human Servs*., No. 09-453V, 2022 WL 5954672, at *36-37 (Fed. Cl. Spec. Mstr. Sept. 12, 2022) (collecting cases for the proposition that "[n]umerous cases in the Vaccine Program have recognized that a special master may reject the opinion from an expert that assumed a set of facts not supported by the record."). Thus, Dr. Lazor's opinion cannot carry a cause-in-fact claim. *Accord Snyder v. Sec'y of Health & Human Servs.*, 88 Fed.Cl. 706, 746 n.67 (2009) ("there is nothing . . . that mandates that the testimony of a treating physician is sacrosanct—that it must be accepted in its entirety and cannot be rebutted").

Petitioner states in her motion with regard to the finding of fact that "[t]he Court erroneously placed more weight on a medical visit from November 2, 2018 from a family medicine nurse practitioner than an April 2, 2019 medical visit from an orthopedist who specializes in shoulder injuries. The court's ruling was arbitrary and capricious." (ECF No. 48, p. 2.) This argument appears to misunderstand the nature of the fact finding given that the fact finding relates to the accuracy of the history provided *by petitioner*. The specialty or qualifications of the medical providers involved is not in itself evidence that counters the relative value of a contemporaneously provided patient history over a more remote patient history. As the prior finding of fact explained, there is no evidence to suggest that Dr. Lazor confirmed the site of vaccine administration before rendering his opinion. *Accord James-Cornelius*, 984 F.3d at 1380 (noting that "for many medical symptoms or events . . . the patient's or a parent's testimony may be the best, or only, direct evidence of their occurrence. Medical records related to those symptoms would likely be based on the statement of those who experienced them.") Given petitioner's

earlier vaccination and treatment records, the more remote history she provided the orthopedist is entitled to less weight.  *See e.g.*, *R.K. v. Sec'y of Health & Human Servs.*, No. 03-632V, 2015 WL 10936124, at *76 (Fed. Cl. Spec. Mstr. Sept. 28, 2015) (holding that more remote histories of illness do not have sufficient indicia of reliability to be credited over conflicting contemporaneous medical records and earlier reported histories), *mot. rev. denied,* 125 Fed Cl. 57 (2016), *aff'd* 671 Fed.Appx. 792 (Fed. Cir. 2016); *see also e.g.*, *Vergara v. Sec'y of Health & Human Servs.*, 08-882V, 2014 WL 2795491, *4 (Fed. Cl. Spec. Mstr May 15, 2014) ("Special Masters frequently accord more weight to contemporaneously-recorded medical symptoms than those *recorded in later medical histories*, affidavits, or trial testimony" (emphasis added).).  Moreover, the orthopedist's ultimate conclusion is only as reliable as the underlying information.  *See, e.g. Garner v. Sec'y of Health & Human Servs.*, No. 15-63V, 2017 WL 1713184, at *11 (Fed. Cl. Spec. Mstr. Mar. 24, 2017) (explaining that "the opinions or diagnoses of treating physicians are only as trustworthy as the reasonableness of their suppositions or bases. The views of treating physicians should also be weighed against other, contrary evidence also present in the record—including conflicting opinions among such individuals."), *mot. rev. denied,* 133 Fed. Cl. 140 (2017).

An overarching theme of petitioner's briefs is the suggestion that the lack of any alternative explanation for her shoulder injury renders the finding of fact "nonsensical." (ECF No. 48, p. 28.)  In effect, petitioner argues that because she has now in hindsight attributed her injury to her vaccination, it must necessarily be the case that her injury was vaccine caused.  Petitioner asserts that "the only logical explanation when looking at the medical record as a whole, is that petitioner was vaccinated in her right shoulder and experienced SIRVA since her October 11, 2018 vaccination."  (*Id*.)  However, this begs the very question of this litigation.  Where a petitioner has, as here, failed to preponderantly establish a fundamental factual element of her claim – in this case that her vaccine was administered in the appropriate arm – that conclusion is neither illogical nor "nonsensical."  It is simply incompatible with petitioner's hindsight belief that her injury was related to her vaccination. Shoulder injuries, regardless of cause, are not rare or unusual injuries.  Indeed, as respondent's response stresses, even if petitioner had preponderantly established as merely a threshold matter that her vaccine was administered in the deltoid of her injured shoulder, there would still be multiple other issues to litigate with respect to whether petitioner's overall medical history is suggestive of any vaccine-related shoulder injury.

## VI.    Conclusion

Petitioner has my sympathy for what she has endured.  However, considering the record as a whole under the standards applicable in this program, petitioner has not preponderantly established either that her October 11, 2018, flu vaccination resulted in a Table SIRVA or alternatively caused-in-fact a shoulder injury. Accordingly, petitioner is not entitled to compensation.  Therefore, this case is dismissed.[9]
.

---

[9] In the absence of a timely-filed motion for review of this Decision, the Clerk of the Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master
